IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Gregory Cargill, | ) | Case No. 6:25-cv-01841-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| The City of Greenville, South | ) | |
| Carolina; Brian Horton, | ) | |
| *individually and in his official capacity* | ) | |
| *as Fire Chief*, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on Defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. 14.] The motion is fully briefed [Docs. 16; 17] and ripe for consideration.

**BACKGROUND**[1]

Plaintiff is a firefighter who, during the events in question, was employed by the City of Greenville Fire Department ("GCFD") and served as president of the Greenville City Professional Firefighters, International Association of Fire Fighters, Local 2261 ("Local 2261"). [Doc. 1 ¶¶ 5–6, 13.] On August 26, 2024, Plaintiff left a message with Defendant Fire Chief Brian Horton's assistant requesting a meeting to discuss goals common to Local 2261 and GCFD. [*Id.* ¶ 15.] On August 28, 2024, Chief Horton responded by email stating the City would not engage in collective bargaining with Local 2261 but that he would meet with Plaintiff "Chief to firefighter," and he directed Plaintiff to

---

[1] The Background section is a summary of the allegations contained in the Complaint. [Doc. 1.]

go through the chain of command to set up the meeting or for any other communications. [*Id.* ¶¶ 16–17; Doc. 1-1.]

On September 9, 2024, Plaintiff attended a City Council meeting and asked Councilmember Dorothy Dowe if he could meet with her. [Doc. 1 ¶¶ 18–19.] He followed up with emails to Councilmember Dowe on September 10 and October 9, 2024, voicing concerns about GCFD, including low morale. [*Id.* ¶¶ 22–23; Doc. 1-2.] On October 10, 2024, Plaintiff emailed Chief Horton, reiterating that his communications were not a request for recognition or collective bargaining but were simply an effort to discuss departmental issues of concern both to rank and file firefighters and to the GCFD. [*Id.* ¶ 25; Doc. 1-3.]

Two days later, Plaintiff sent a detailed letter on Local 2261 letterhead to City Manager Shannon Lavrin identifying serious concerns within GCFD, including safety during calls, training procedures, apparatus organization, class availability and funding, shift scheduling, and a recent policy change restricting firefighter congregation in apparatus bays. [Docs. 1 ¶ 26; 1-4.] He also described a pervasive culture of fear and declining morale. [Docs. 1 ¶ 26; 1-4.] He added that while serving as a firefighter in Florida in a department that also faced morale challenges, he had witnessed the positive impact that engaging a third-party firm to assess the culture and provide candid feedback can have in rebuilding trust within the department. [Doc. 1-4.] He told Lavrin that he hoped they could discuss these issues and work on creating a healthy, more supportive environment for the firefighters. [Docs. 1 ¶ 26; 1-4.]

On October 20, 2024, Plaintiff attended a meeting at which Chief Horton presented a memorandum terminating Plaintiff's employment for "insubordination" and "violating the

chain of command" (the "Termination Letter"). [Docs. 1 ¶¶ 28–29; 1-5.] The Termination Letter asserts that Plaintiff's October 12, 2024, letter to City Manager Lavrin, his emails to Dowe, and his emails to Chief Horton violated city policy and were insubordinate because Chief Horton had directed Plaintiff to first schedule a meeting with him through the regular chain of command to discuss GCFD issues. [Doc. 1-5.] The Termination Letter also asserts that Plaintiff was insubordinate when he approached Councilmember Dowe at the meeting without speaking to Chief Horton first or asking his permission.[2] [*Id.*]

In this action, Plaintiff alleges claims pursuant to 42 U.S.C. § 1983 for violations of his rights under the First and Fourteenth Amendments. [*Id.* ¶¶ 41–72.] He specifically brings claims for violation of his rights to freedom of speech (the "Speech Claim"), freedom of association (the "Association Claim"), and freedom to petition for redress of grievances (the "Petition Claim"), all based on the theory that he was terminated for the communications he made on behalf of Local 2261. [*Id.* ¶¶ 41–66.] He also brings a claim for prior restraint of his free speech rights, alleging that "Defendants, through rule, policy, custom or final decision, require GCFD employees to engage in speech about matters of public concern through the 'chain of command' prior to and/or instead of through Local 2261" (the "Prior Restraint Claim"). [*Id.* ¶¶ 67–72.] Plaintiff seeks declaratory, injunctive, and monetary relief. [*Id.* at 13–14.]

---

[2] Plaintiff was still a probationary employee at the time he was terminated and thus had no right to internally appeal his termination. [Doc. 1 ¶ 32.]

## APPLICABLE LAW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim should be dismissed if it fails to state a claim upon which relief can be granted.  When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff."  *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments."  *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).  Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference.  *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31–32 (4th Cir. 1985).  If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(d).

With respect to well pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all

the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557; *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

## <u>DISCUSSION</u>

**The Speech Claim**

Defendants first argue that Plaintiff fails to state a claim that he was terminated in retaliation for exercising his First Amendment right to free speech. [Doc. 14-1 at 5–16.]

The law on such claims is long settled.

From the outset, we point out that "[t]he First Amendment 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *Connick v. Myers*, 461 U.S. 138, 145 . . . (1983) (quoting *Roth v. United States*, 354 U.S. 476, 484 . . . (1957)). "Protection of the public interest in having debate on matters of public importance is at the heart of the First Amendment." *McVey v. Stacy*, 157 F.3d 271, 277 (4th Cir. 1998) (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 573 . . . (1968)).

To resolve Plaintiff's appeal, we start by considering the First Amendment rights of public employees. Public employees do not "relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." *Connick*, 461 U.S. at 140 . . . . To the contrary, the Supreme Court has long recognized

> that public employees are often the members of the community who are likely to have informed opinions as to the operations of their public employers, operations which are of substantial concern to the public. Were they not able to speak on these matters, the community would be deprived of informed opinions on important public issues.

*City of San Diego v. Roe*, 543 U.S. 77, 82 . . . (2004) (per curiam) (citing *Pickering*, 391 U.S. at 572 . . .). To that end, the Supreme Court has repeatedly "underscored the 'considerable value' of 'encouraging, rather than inhibiting, speech by public employees. For government employees are often in the best position to know what ails the agencies for which they work.'" *Hunter v. Town of Mocksville*, 789 F.3d 389, 396 (4th Cir. 2015) (quoting *Lane v. Franks*, —— U.S. ——, 134 S.Ct. 2369, 2377 . . . (2014)). As such, we do not take lightly "[o]ur responsibility . . . to ensure that citizens are not deprived of fundamental rights by virtue of working for the government." *Connick*, 461 U.S. at 147 . . . .

"That being said, precedent makes clear that courts must also consider 'the government's countervailing interest in controlling the operation of its workplaces.'" *Hunter*, 789 F.3d at 397 (quoting *Lane*, 134 S.Ct. at 2377). Just as there

is a "public interest in having free and unhindered debate on matters of public importance," *Pickering*, 391 U.S. at 573 . . ., "[t]he efficient functioning of government offices is a paramount public interest," *Robinson v. Balog*, 160 F.3d 183, 189 (4th Cir. 1998). Therefore, a public employee "by necessity must accept certain limitations on his or her freedom." *Garcetti v. Ceballos*, 547 U.S. 410, 418 . . . (2006). In particular, under the balancing test developed by the Supreme Court in *Pickering* and *Connick*, "the First Amendment does not protect public employees when their speech interests are outweighed by the government's interest in providing efficient and effective services to the public." *Lawson v. Union Cty. Clerk of Court*, 828 F.3d 239, 247 (4th Cir. 2016).

Regarding [retaliation claims], "a public employer contravenes a public employee's First Amendment rights when it discharges . . . '[the] employee . . . based on the exercise of' that employee's free speech rights." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 316 (4th Cir. 2006) (alteration in original) (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000)). To state a claim under the First Amendment for retaliatory discharge, a plaintiff must satisfy the three-prong test set forth in *McVey v. Stacy*, 157 F.3d 271 (4th Cir. 1998). In particular, the plaintiff must show: (1) that he was a "public employee . . . speaking as a citizen upon a matter of public concern [rather than] as an employee about a matter of personal interest;" (2) that his "interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public;" and (3) that his "speech was a substantial factor in the employer's termination decision." 157 F.3d at 277–78.

*Grutzmacher v. Howard Cnty.*, 851 F.3d 332, 341–42 (4th Cir. 2017) (some alterations in original).

Defendants argue that the Speech Claim "should be dismissed because [Plaintiff] has not, and cannot, allege he engaged in speech that relates to a matter of public concern and fails to assert his communications outweighed the employer's interest in the

efficient operation of the workplace." [Doc. 14-1 at 5.] The Court will address these two issues seriatim.

### Plaintiff Has Plausibly Alleged That He Spoke on a Matter of Public Concern

Eight days before he was terminated, Plaintiff sent a letter to City Manager Lavrin in which he voiced "serious concerns regarding the morale and confidence within the Greenville City Fire Department." [Doc. 1-4.] In the letter, he described an "overarching lack of confidence in the current administration" within the rank and file in the GCFD based on the administration's failure "to resolve several key issues, including safety during calls, training procedures, apparatus organization, class availability and funding, shift scheduling, and . . . [a] policy change regarding personnel congregating in the bays." [*Id.*] Plaintiff further represented that "there [wa]s a pervasive sense of fear among the rank and file when it comes to speaking out" insofar as "[m]any firefighters fe[lt] that raising concerns w[ould] lead to harassment or retaliation, creating an environment where they [we]re hesitant to voice their opinions." [*Id.*] This environment in turn "led to widespread apathy, further contributing to the decline in morale." [*Id.*] Plaintiff also indicated that in his experience as a firefighter in Florida with a department that faced similar challenges, he had "seen firsthand the positive impact that . . . [e]ngaging a third-party firm to assess the culture and provide candid feedback" had "toward addressing these issues and rebuilding trust within the department." [*Id.*]

These issues that Plaintiff raised constitute expressions of "concern about the inability of the Department to carry out its vital public mission effectively." *Liverman v. City of Petersburg*, 844 F.3d 400, 410 (4th Cir. 2016) (cleaned up). His statements sharing that the rank and file believed that the administration had failed to adequately address so

many critical issues and had created an environment where they did not feel free to speak candidly was important information with which the community and its decision-making representatives would be expected to be concerned. *See Fire Fighters Ass'n, D.C. v. Barry*, 742 F. Supp. 1182, 1189–90 (D.D.C. 1990) (holding that the firefighter plaintiffs' displaying bumper stickers stating, "D.C. Fire Department—It's Not Just A Job, It's A Joke, Too!" amounted, at least in part, to speech on a matter of public concern when viewed in the context of the ongoing public controversy regarding the efficiency and management of the department and the fact that the firefighters' display of the stickers suggested low morale among the firefighters, which could affect the ability of the department to fulifill its duties to promote public safety); *see also Moore v. City of Kilgore*, 877 F.2d 364, 371 (5th Cir. 1989) ("The operation of the city Fire Department certainly is a matter that concerns interested citizens."). Accordingly, the Court concludes that Plaintiff has adequately pled that his speech was as a private citizen on a matter of public concern. *See Liverman*, 844 F.3d at 410 (holding speech was on a matter of public concern when the matter "addressed was of more than personal import").

### *Plaintiff Has Plausibly Alleged He Prevails on the* Pickering *Balance*

In *Pickering* balancing, "the government bears the burden of justifying the discharge on legitimate grounds." *Lawson v. Union Cnty. Clerk of Court*, 828 F.3d 239, 252 (4th Cir. 2016) (internal quotation marks omitted). "However, the government need not prove that the employee's speech actually disrupted efficiency; rather, its burden is to show that an adverse effect was reasonably to be apprehended." *Id.* (internal quotation marks omitted). For *Pickering* balancing, the Court "must take into account the context

of the employee's speech and the extent to which it disrupts the operation and mission of the institution." *Ridpath*, 447 F.3d at 317 (internal quotation marks omitted).

> Factors relevant to this inquiry include whether a public employee's speech (1) impaired the maintenance of discipline by supervisors; (2) impaired harmony among coworkers; (3) damaged close personal relationships; (4) impeded the performance of the public employee's duties; (5) interfered with the operation of the institution; (6) undermined the mission of the institution; (7) was communicated to the public or to coworkers in private; (8) conflicted with the responsibilities of the employee within the institution; and (9) abused the authority and public accountability that the employee's role entailed.

*Id.*

Defendants argue that the purpose of the chain of command rules is to prevent attempts "by employees to bring Council pressure to bear on the City Manager, or to seek favored treatment by direct appeal to City council members" and that "chain of command policies in the paramilitary organizations (fire and police) operated in a city" are intended "to save lives." [Doc. 14-1 at 14 (internal quotation marks omitted).] However, the Court notes that "[f]ew cases, if any, resolve the *Pickering* balance against the plaintiff at the Rule 12(b)(6) stage where the plaintiff has alleged more than a de minimis interest in speech on a matter of public concern. Rather, the balancing usually implicates fact questions appropriate for summary judgment." *Jones v. City of Greensboro*, No. 1:24CV450, 2025 WL 969360, at *6 (M.D.N.C. Mar. 31, 2025) (collecting cases).

*Ridpath* provides a prime example. In that case, the Fourth Circuit concluded that the plaintiff had sufficiently alleged that his interest in speaking outweighed a school's interest in promoting the efficient provision of public services. In reaching that conclusion, the court emphasized that "[n]othing in the Amended Complaint indicates . . . that [the

plaintiff's] comments impaired the maintenance of discipline, hurt workplace morale, or constituted an abuse of his position." *Ridpath*, 447 F.3d at 318. The court added:

> Once a factual record is developed through discovery, the evidence could support the inference that Ridpath's workplace was impaired as a result of his comments and that he simply had to be terminated from his adjunct teaching position. *Such a question, however, is not to be assessed under Rule 12(b)(6) but in Rule 56 summary judgment proceedings. See McVey*, 157 F.3d at 278–79 (affirming district court's decision to defer deciding qualified immunity until "record is better developed" in part because complaint did not "resolve on its face" second prong of *McVey* test). At the Rule 12(b)(6) stage, Ridpath's allegations warrant the inference that his free speech interests outweigh the detrimental effect, if any, his comments may have had on the efficiency of his workplace.

*Ridpath*, 447 F.3d at 318 (emphasis added).

As was true of the allegations in *Ridpath*, nothing in the Complaint here demonstrates Defendants will be able to show that Plaintiff's interest in speaking upon the matter of public concern did not outweigh GCFD's interest in providing effective and efficient services to the public. As in *Ridpath*, nothing in the Complaint suggests that any harm resulted from Plaintiff's communications with Chief Horton, the City Manager, and Councilmember Dowe. Especially given that "the *Pickering* balance is a fact-intensive inquiry, and the burden is on the governmental employer to justify the discharge, *see Jones*, 2025 WL 969360, at *7, the Court concludes, as did the courts in *Ridpath* and *Jones*, that the balancing issue would be more appropriately evaluated at the summary judgment stage.[3]

---

[3] The Court notes that in arguing that Plaintiff's allegations are insufficient regarding *Pickering* balancing, Defendants focus primarily on their contention that Plaintiff was insubordinate in sending questionnaires regarding the GCFD to nonsupervisory officers after he was denied an immediate audience with Chief Horton and City Council. [Doc. 14-

In sum, for the reasons discussed, Plaintiff's allegations are sufficient at the pleadings stage concerning the issue of *Pickering* balancing and Defendants' motion to dismiss is denied as to the Speech Claim.

**The Association Claim**

The First Amendment protects not only the freedom to speak but also the "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends."  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984).  This includes the right to affiliate with and advocate through a labor union, even in jurisdictions that do not recognize public-sector collective bargaining.  *See Smith v. Ark. State Highway Emps., Loc. 1315*, 441 U.S. 463, 464–65 (1979); *Hickory Fire Fighters Ass'n Loc. 2653 of Int'l Ass'n of Fire Fighters v. City of Hickory*, 656 F.2d 917, 921 (4th Cir. 1981).

Defendants argue that the Association Claim fails to state a claim because Plaintiff has not plausibly pled that he was terminated because of his union association.  [Doc. 14-1 at 17.]  They first maintain that it makes no sense that he would be discriminated against based on his union advocacy because GCFD hired Plaintiff with "full knowledge of his union membership (and leadership roles therein)" during a prior stint at GCFD.  [*Id.*]

The Court disagrees.  Nothing in the Complaint alleges that Plaintiff criticized Chief Horton to his superiors during Plaintiff's prior stint in union leadership.  In the absence of such allegations, the claim that Plaintiff was fired for his conduct on behalf of the union is sufficiently plausible to survive a motion to dismiss, particularly given the temporal

---

1 at 14–16.]  They argue that such conduct is not speech on a matter of public concern and is not protected because it is highly disruptive of the fire department.  [*Id.* (citing *Connick*, 461 U.S. at 138).]  Defendants' argument misses the mark, however.  Whether Plaintiff's surveying of the firefighters constitutes constitutionally protected speech is immaterial because Plaintiff does not allege he was fired for conducting the surveys.

proximity between the conduct and the termination.  *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005) (holding that a four-month lapse between protected speech and alleged retaliation was sufficient to plausibly allege a causal connection).

Defendants also argue that the Association Claim is co-extensive and duplicative of the Speech Claim because the Association Claim alleges Plaintiff was terminated for his speech and advocacy, not his mere association with the union.  [Doc. 14-1 at 17–18.]  The Court disagrees.  When a plaintiff pleads alternative theories, both of which have "legal validity as applied to the operative facts, the plaintiff [is] entitled to have both theories submitted to the jury."  *United Roasters, Inc. v. Colgate-Palmolive Co.*, 649 F.2d 985, 990–91 (4th Cir. 1981); *see Red Cardinal Fifteen, Inc. v. Lange*, No. 96-1115, 1997 WL 33122, at *6 (4th Cir. Jan. 28, 1997) ("[U]nder the general rule in the federal courts[,] . . . election between . . . duplicative remedies may, in the trial court's discretion, be deferred to and past submission to the jury and return of verdicts as circumstances warrant.").

Defendants further argue that Plaintiff did not have a First Amendment right to advocate for his membership in his capacity as leader of the union because South Carolina forbids public-sector collective bargaining.  [Doc. 14-1 at 3–4.]  But the Supreme Court explained in *Smith* that the First Amendment protects the right to "associate and speak freely and petition openly," even where the government has no duty to respond or recognize the union.  *Smith*, 441 U.S. at 465.  Thus, to the extent Defendants terminated Plaintiff for his advocacy on behalf of Local 2261, Defendants may have violated his First Amendment association rights.  The Court notes that Plaintiff does not allege that he

13

contacted Chief Horton to engage in collective bargaining.  [*See generally* Doc. 1.]  In fact, in his October 2024 email to Chief Horton, which is referenced in the Complaint and attached thereto, Plaintiff clarified that he was not seeking to collectively bargain.  [Docs. 1 ¶ 25; 1-3]

For all of these reasons, Defendants' motion to dismiss is denied as to the Association Claim.

**The Petition Claim**

The right to petition the Government for a redress of grievances "is cut from the same cloth as the other guarantees of [the First] Amendment, and is an assurance of a particular freedom of expression."  *McDonald v. Smith*, 472 U.S. 479, 482 (1985).  The Fourth Circuit has clarified that "a public employee's petition, like his speech, is constitutionally protected only when it addresses a matter of public concern."  *Kirby v. City of Elizabeth City*, 388 F.3d 440, 448 (4th Cir. 2004).

In arguing for dismissal of the Petition Claim, Defendants repeat many of the same arguments the Court has already addressed regarding the Speech Claim [Doc. 14-1 at 18], and the Court will not repeat its discussion of those issues here.

Defendants also argue that the Petition Claim is not adequately pled because Plaintiff's allegations do not account for the fact that Chief Horton offered to meet with him and Plaintiff acted insubordinately by communicating with Dowe and Lavrin without accepting Chief Horton's offer to meet.  [*Id.*]  Although Defendants appear to suggest—as the Termination Letter states—that it was Plaintiff's insubordination and violation of city policy, and not the substance of Plaintiff's speech, that motivated his termination, a

plausible inference from the facts alleged is that it was Plaintiff's criticisms of Chief Horton and the GCFD that motivated the termination.[4]

In sum, for the reasons discussed, Defendants' motion to dismiss is denied as to the Petition Claim.

**The Prior Restraint Claim**

Plaintiff alleges that "Defendants, through rule, policy, custom or final decision, require GCFD employees to engage in speech about matters of public concern through the 'chain of command' prior to and/or instead of through Local 2261." [Doc. 1 ¶ 68.]

"Prior restraint" is a term "used to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States,* 509 U.S. 544, 550 (1993) (internal quotation marks omitted). A restriction constitutes a prior restraint when it satisfies four elements: (1) the speaker must apply to the decision maker for approval before engaging in the proposed speech; (2) the decision maker must be empowered to determine whether the applicant should be granted permission on the basis of its review of the content of the proposed communication; (3) approval of the application requires the decision maker's affirmative action; and (4) approval is not a matter of routine, but involves appraisal of facts, the exercise of judgment, and the formation of an opinion. *See Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 554 (1975); *Samuelson v. LaPorte Cmty. Sch. Corp.*, 526 F.3d 1046, 1051 (7th Cir. 2008). However, before a court applies

---

[4] Defendants also state in passing that "Plaintiff never filed a formal petition or claim with the government . . . ." [Doc. 14-1 at 18.] It appears that Defendants' statement is made in support of their argument that Plaintiff did not file a petition on a matter of public concern. The Court notes that "the right to petition is not limited to petitions lodged under formal procedures." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 393 (2011).

this test to a challenged policy, it first must determine under *Pickering* that the policy applies to speech protected by the First Amendment. *See Samuelson*, 526 F.3d at 1052.

Defendants contend that the Prior Restraint Claim is not adequately pled because (1) Plaintiff fails to plausibly allege that under *Pickering* the challenged policy applies to speech protected by the First Amendment, (2) Plaintiff fails to adequately plead any of the four required elements of a prior restraint as set out in *Southeastern Promotions*, and (3) the policy cannot be a prior restraint because it penalizes speech only after it occurs. [Doc. 14-1 at 19–24.]

The Court focuses on Defendants' second argument, that Plaintiff fails to adequately plead any of the four elements of a prior restraint.[5]  As noted, Plaintiff alleges that Defendants set up a prior restraint by requiring employees to go through the chain of command in engaging speech on matters of public concern.  [Doc. 1 ¶ 68.]  The Court will assume that Plaintiff plausibly alleges the first element, that the speaker must apply to the decision maker for approval before engaging in the proposed speech.  However, the Complaint is silent regarding the second, third, and fourth elements—concerning whether the decision maker is empowered to determine whether the applicant should be granted permission on the basis of its review of the content of the proposed communication; whether approval of the application requires the decision maker's

---

[5] The Court notes that in response to Defendants' argument that Plaintiff fails to adequately allege any of these required elements, Plaintiff simply refuses to acknowledge the argument and generally repeats its explanation of why the Complaint's allegations are sufficient under *Pickering*.  By not addressing Defendants' argument concerning the elements of a prior restraint claim, Plaintiff has arguably waived the Prior Restraint Claim. *Cf. Eady v. Veolia Transp. Servs.*, 609 F. Supp. 2d 540, 560–61 (D.S.C. 2009) ("The failure of a party to address an issue raised in summary judgment may be considered a waiver or abandonment of the relevant cause of action.")

affirmative action; and whether approval is not a matter of routine, but involves appraisal of facts, the exercise of judgment, and the formation of an opinion. *SE Promotions, Ltd*, 420 U.S. at 554. In the absence of allegations addressing any of these elements, Plaintiff's factual allegations are insufficient to raise his "right to relief above the speculative level." *Twombly*, 505 U.S. at 555. Accordingly, Defendants' motion to dismiss is granted without prejudice as to the Prior Restraint Claim.

**Claims Against Chief Horton**

### *Official Capacity Claims*

Defendants argue that Plaintiff's claims against Chief Horton in his official capacity should be dismissed because they are redundant of Plaintiff's claims against the City. [Doc. 14-1 at 24.] The Court agrees. *See Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) ("The district court correctly held that the § 1983 claim against Martin in his official capacity as Superintendent is essentially a claim against the Board and thus should be dismissed as duplicative."); *Talley v. City of Charlotte*, No. 3:14-cv-683-MOC-DCK, 2016 WL 8679235, at *13 (W.D.N.C. July 22, 2016) (holding that "in a suit where the plaintiff asserts a claim against a government entity, a suit against those individuals working in their official capacity for this government entity is redundant" and thus should be dismissed). Therefore, Plaintiff's claims against Chief Horton in his official capacity are dismissed without prejudice.

### *Individual Capacity Claims*

Defendants argue that Chief Horton is entitled to qualified immunity as to the claims against him in his individual capacity. [Doc. 14-1 at 24–25.] Qualified immunity protects government officials performing discretionary functions from civil damage suits

as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id*. Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "whether the plaintiff has alleged the deprivation of an actual constitutional right at all[] and . . . whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (internal quotation marks omitted). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (cleaned up). For purposes of this analysis, a right is "clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. at 640 (cleaned up).

In arguing that Chief Horton is entitled to qualified immunity as to the Speech, Association, and Petition Claims, Defendants merely repeat their arguments that Plaintiff has failed to adequately plead facts establishing any constitutional violation. [Doc. 14-1 at 25.] They do not argue that there is any grey area in the law that would entitle Chief Horton to summary judgment on qualified immunity's second prong. [*Id*.] In any event,

the Court concludes that "[r]ead in the proper light, [the Complaint] alleges that [Defendants] retaliated against [Plaintiff] for making protected statements that they did not like. Such activity does not merely implicate the gray edges of the right[s] [Plaintiff] assert[]; it goes to its very core." *Ridpath*, 447 F.3d at 321. Accordingly, Plaintiff adequately alleges a violation of clearly established law of which a reasonable person would have known, and Chief Horton is not entitled to dismissal of the claims against him in his individual capacity on the basis of qualified immunity.

## CONCLUSION

Wherefore, based on the above, Defendants' motion to dismiss [Doc. 14] is GRANTED in part and DENIED in part. The motion is granted without prejudice as to Plaintiff's claim alleging an unconstitutional prior restraint and as to Plaintiff's claims against Chief Horton in his official capacity, and it is otherwise denied.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States District Judge

February 3, 2026
Greenville, South Carolina